ERNEST V. BALDWIN, Appellee, v. SUPREME TRIBE OF BEN HUR, Appellant.

INSURANCE: Life Insurance—Duty to Attach Copy of Application— 1 **Applicability.** The duty of an insurer to attach to a beneficiary certificate a copy of the insured's application, or lose the right to

plead *fraudulent* representations in the certificate or application, applies to a policy issued by a foreign beneficiary association, as well as to a domestic association.

INSURANCE: Life Insurance—Failure to Attach Copy of Application—
2. Cancellation of Policy.   An insurer who fails to attach to a beneficiary certificate of insurance a copy of the insured's application may not prove fraudulent representations in the application or certificate as a basis for the cancellation of the certificate.

Headnote 1: 32 C. J. pp. 977, 1119; 29 Cyc. p. 68.   Headnote 2: 32 C. J. p. 1119.

Headnote 1: 14 R. C. L. 886.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

MARCH 8, 1927.

Action by the beneficiary named in a beneficial certificate of membership issued by the defendant, to recover the amount therein agreed to be paid on the death of the member.   A demurrer to the answer was sustained.   The defendant elected to stand on the ruling, and judgment for the plaintiff was entered.   The defendant appeals.—*Affirmed.*

*W. A. Cook* and *Mears & Lovejoy*, for appellant.

*Wenner & Mosier*, for appellee.

VERMILION, J.—The appellant is a fraternal beneficial association organized and existing under the laws of Indiana.   The appellee was the husband of Ruth A. Baldwin, deceased, and is

1. INSURANCE: life insurance: duty to attach copy of application: application: applicability.

the beneficiary named in a certificate of beneficial membership issued by the appellant to her in her lifetime.   In such certificate the appellant agreed to pay to the beneficiary named therein the sum of $1,000 from its benefit fund, in the event of the death of Ruth A. Baldwin.   The action is to recover on this contract.

The certificate expressly made the articles of incorporation and the by-laws of the association, the application for membership and the medical examination signed by the applicant, a

part of the contract. No copy of the application was attached to, or indorsed on, the certificate.

The answer admits the issuance of the certificate of membership, the death of the member in good standing, and the making of proper proofs of death. It sets up the application and the medical examiner's certificate signed by Ruth A. Baldwin, and pleads that the by-laws of the association provide that all its contracts shall be considered as made in Indiana, and shall be construed under the laws of that state; that the laws of Indiana contain no provisions requiring the application or medical examiner's certificate to be attached to the certificate of membership, in order for the association to rely upon fraud, false statements, or warranties contained in the application or the medical examiner's certificate. The answer avers that Ruth A. Baldwin, in the application and the medical examiner's certificate, made certain untrue, false, and fraudulent answers in relation to her state of health, upon which the association relied in issuing the certificate of membership. In a separate division of the answer, and by way of cross-petition, the prior allegations in respect to false and fraudulent statements of Ruth A. Baldwin are, in effect, repeated, and it is alleged that she and the appellee conspired to fraudulently procure the certificate, and its cancellation is asked. No other alleged fraudulent statements than those found in the application and the medical examiner's certificate are set up.

I. Section 1826, Code of 1897, relating to fraternal beneficiary societies or associations, is as follows:

"All such associations shall, upon the issue or renewal of any beneficiary certificate, attach to such certificate or indorse thereon a true copy of any application or representation of the member which by the terms of such certificate are made a part thereof. The omission so to do shall not render the certificate invalid, but if any such association neglects to comply with the requirements of this section it shall not plead or prove the falsity of any such certificate or representation or any part thereof in any action upon such certificate, and the plaintiff in any such action, in order to recover against such association, shall not be required to either plead or prove such application or representation."

See, also, Sections 8793 and 8794, Code of 1924.

The provisions of the by-laws that the contract should be considered as made in Indiana and construed according to the laws of that state did no more than to make the certificate of membership an Indiana contract.  But Section 1826 is procedural only, and relates solely to matter of remedy, and not to the existence or validity of the contract.  It applies to all actions brought in this state upon such certificates; and this is true although the contract was made in another state.  *Nelson v. Nederland Life Ins. Co.*, 110 Iowa 600; *Rauen v. Prudential Ins. Co.*, 129 Iowa 725; *Dixon v. Northwestern Nat. L. Ins. Co.*, 189 Iowa 1268; *Stanhilber v. Mutual Mill Ins. Co.*, 76 Wis. 285 (45 N. W. 221); *Wheelock v. Home Life Ins. Co.*, 115 Minn. 177 (131 N. W. 1081); 32 Corpus Juris 977.  It has often been said that foreign insurance companies are not compelled to do business in the state, and, if they voluntarily choose to do so, they must submit to such conditions and restrictions as the legislature may see fit to impose.

It is true, the Iowa cases cited above involved a statute (Section 1812 or 1819, Code of 1897), referring to life insurance companies, and not to fraternal beneficiary associations, such as appellant.  Sections 1819 and 1826 are, however, substantially identical in language, and are clearly designed to effect the same purpose.  The only reason suggested by appellant why a different construction and application should be given Section 1826 is that, in the case of a foreign fraternal beneficial association, with members in states having no such statute, mutuality between the members would be destroyed, in that false statements in the application would be available as a defense in actions on certificates in such states, but not in this.  The obvious answer to this contention is that, as has been frequently pointed out by the courts, it rests entirely with the association to place itself in a position to rely fully upon any false statement in the application by attaching a copy of the application to the certificate of membership.

II.  It is contended that the statute does not apply to statements in the application that are knowingly false, and therefore fraudulent, but only to false statements innocently or mistakenly made.  The only authority cited in support of this contention is *Spaulding v. Mutual Life Ins. Co.*, 96 Vt. 67 (117 Atl. 376).  The statute there construed referred to "statements

made by the insured in the absence of fraud." The case is clearly not in point. We have held that the medical examination is a part of the application, and that, where a copy of the application is not attached to the policy, false and fraudulent representations therein made by the insured may not be shown in defense of an action on the policy. *Rauen v. Prudential Ins. Co.*, supra. We there said:

"It may be admitted, for the purposes of this case, that the fraud pleaded was sufficient to avoid the policy if the appellant had put itself in position to make use of the defense; but, failing to attach a copy of the application to the policy, it waived its right to take issue upon the application or any part of it."

III. Finally, appellant contends that, if the alleged false statements in the application are not available in defense of the action on the certificate of membership, they may be shown under the cross-petition for cancellation of the certificate. It is sufficient to say, in respect to this contention, that we held to the contrary in *Dixon v. Northwestern Nat. L. Ins. Co.*, supra. In that case it was alleged that the insured had falsely stated his age, in the application. No copy of the application was attached to the policy. The insurer, in an action on the policy, filed a cross-petition asking that the policy be reformed to provide for the amount of insurance the premium actually paid would have secured for one of the true age of the insured. Speaking of the cross-petition, we said:

2. INSURANCE: life insurance: failure to attach copy of application: cancellation of policy.

"That pleading has no other purpose than to defeat the action on the policy, and to accomplish this by alleging, pleading, and proving the contents of the application and the alleged falsity of its statements. Its character and purpose are not changed by attaching thereto a prayer for equitable relief. Indeed, it needs but a glance to demonstrate that the second division of defendant's answer states no case for equitable consideration or equitable relief. Assuming, for the purposes of this opinion, that the claim put forth by appellant is literally true, and that the application falsely states Dixon's age at 43 years, when, in truth, he was 50 years old, what is there in it all which calls for a reformation of the contract? In such case, the appellant had only to obey the statute, and attach a copy of the application to the policy, to have a complete and perfect de-

fense to plaintiff's action at law on the policy; or if, as counsel seem to concede, the defense would be partial only, the issue would still be legal, and not equitable, and the facts from which the recoverable amount could be ascertained would be competent and admissible evidence, without resort to equity. But the insurer elected to withhold the required copy of the application, or, to say the least, it neglected to comply with the statute, and thus, by its own act, made itself and its defense subject to the resulting statutory restriction, which precludes it from 'alleging, pleading, or proving' any fraud or misrepresentation in such application. After it has voluntarily placed itself in that position, equity cannot relieve it from the effect of the statute which it disregarded."

The demurrer was rightly sustained, and the judgment is— *Affirmed*.

EVANS, C. J., and STEVENS and FAVILLE, JJ., concur.